EARL GODWIN, Respondent, v. NATIONAL COUN-
    CIL KNIGHTS AND LADIES OF SECURITY,
    Appellant.

Kansas City Court of Appeals, June 17, 1912.

1. FRATERNAL BENEFICIARY ASSOCIATIONS: Forfeiture:
   Waiver. Prompt payment of dues and assessments may be
   waived by a course of dealing with the insured, notwithstanding
   the certificate provides that no waiver of forfeiture shall be
   valid unless in writing signed by an officer of the association.

2. ———: Invalid By-Law. The provision of a by-law of a fra-
   ternal beneficiary association that "the receipt and retention of
   unpaid delinquent dues and assessments in case a suspended
   member is not in good health shall not have the effect of re-
   instating such member or entitling him or his beneficiary to any
   right under his certificate" is invalid.

3. ———: Waiver. The act of a fraternal beneficiary association
   in receiving and retaining a member's dues and assessments
   after the appointed time for payment and without protest until
   after the death of the member, is a waiver of the cause for
   forfeiture.

166 Mo. App.—19

4. ———: **Estoppel.**   A fraternal beneficiary association is estopped from declaring a forfeiture, for non-payment of dues and assessments within the time provided, by its manner of doing business in receiving the delinquent assessments of its member and treating them as reinstated members of its order.

Appeal from Buchanan Circuit Court.—*Hon. W. K. Amick,* Judge.

AFFIRMED.

*W. E. Stringfellow* for appellant.

The demurrer to the evidence should have been given.   Under the provisions of the contract of insurance, plaintiff's rights are governed by the laws of 1908.   Richmond v. Supreme Lodge, 100 Mo. App. 8; Lewine v. Knights of Pythias, 122 Mo. App. 547; Gruewell v. Knights & Ladies of Security, 126 Mo. App. 496.   Our appellate courts hold that failure to pay on time works a self-executing suspension; that suspension results *ipso facto* from non-payment of assessments or dues at the agreed time.   Easter v. Brotherhood, 154 Mo. App. 456; Smith v. W. O. W., 179 Mo. 119; Lavin v. Grand Lodge, 104 Mo. App. 1; Boyce v. Royal Circle, 99 Mo. App. 349; Curtin v. Grand Lodge, 65 Mo. App. 294; Harvey v. Grand Lodge, 50 Mo. App. 472.   That "a law of the order, prescribing a forfeiture of the benefit certificate held by the member, as a penalty for his failure to pay, when payable, dues and assessments provided by his contract, is reasonable and will be reasonably enforced by the courts."   Easter v. Brotherhood, 154 Mo. App. 462.   That no judicial determination of suspension is necessary.   Smith v. W. O. W., 179 Mo. 119; McMahon v. Maccabees, 151 Mo. 522; Lavin v. Grand Lodge, 104 Mo. App. 15; Ellerbe v. Faust, 119 Mo. App. 653; Borgraefe v. Knights of Honor, 22 Mo. App. 127.   They hold that a collector appointed by a local lodge is not the agent of the grand lodge and that

his action in receiving assessments from delinquent members does not bind the grand lodge, and is not a waiver. Burke v. Grand Lodge, 136 Mo. App. 450; Lavin v. Grand Lodge, 104 Mo. App. 1; Chadwick v. Order of Triple Alliance, 56 Mo. App. 473. They hold that even if the financier of a local lodge be regarded as the agent of the supreme lodge, he could not bind it in his transactions with a member beyond the scope of his authority. Harvey v. Grand Lodge, 50 Mo. App. 478; Borgraefe v. Knights of Honor, 22 Mo. App. 141.

*Thompson, Griswold & Thompson* for respondent.

It is a well-settled law in Missouri that an agreement on the part of an insured to comply with the future enacted by-laws of a society of which he is a member, does not bind him, if such after enacted by-law in anyway impairs the obligation of his contracts or imposes on him an additional burden. Young v. Railway Mail Ass'n., 126 Mo. App. 333; Morton v. Supreme Council, 100 Mo. App. 91; Sisson v. Court of Honor, 104 Mo. App. 54; Zimmerman v. Supreme Tent, 122 Mo. App. 591; Snail v. Court of Honor, 136 Mo. App. 434; Wilcox v. Court of Honor, 134 Mo. App. 547; Pearson v. Indemnity Col., 114 Mo. App. 288. The appellant waived whatever right it may have had to claim the suspension of deceased, by its long continued practice of allowing the local councils to accept dues out of time, without compelling strict compliance with the laws after said knowledge was brought home to it. Burke v. Grand Lodge, 136 Mo. App. 459; James v. Insurance Co., 148 Mo. 10; McMahon v. Maccabees, 151 Mo. 522; Warner v. Modern Woodmen, 119 Mo. App. 228; Cline v. W. O. W., 111 Mo. App. 601; Nickell v. Insurance Co., 144 Mo. 420. The provisions, conditions or exceptions which in any way tend to work a forfeiture of the policy, should be construed

most strongly against those who will receive the bene-
fit therefrom, and most favorably towards those who
will be damaged thereby. 1 Cyc. 243; McFarland v.
Mutual Life, 124 Mo. 204; Cunningham v. Casualty
Co., 32 Mo. App. 607; Leech v. Casualty Co., 176 Mo.
654; McMahon v. Maccabees, 151 Mo. 542; 2 Joyce on
Insurance, sec. 1356. The prompt payment of pre-
miums is for benefit of the insurer and may be waived
or suspended by it or its agents in express terms, or
by its course of conduct with the insured. James v.
Insurance Co., 148 Mo. 12; 1 Joyce on Insurance, p.
544, sec. 439. Forfeitures are in the interest of the
insurer and against the insured and any course of
business on the part of the insurer which leads the in-
sured to believe that by conforming thereto a forfei-
ture of his policy will not be incurred followed by due
conformity on his part, will and ought to estop the in-
surer from insisting upon a forfeiture, although a for-
feiture might be claimed under the express letter of
the contract. James v. Insurance Co., 148 Mo. 1; Mc-
Mahon v. Insurance Co., 151 Mo. 522; Thompson v.
Insurance Co., 52 Mo. App. 468; Andre v. Woodmen,
102 Mo. App. 377. Even though the insurance society
or order provides by its by-laws that the officers of the
local council are the agents of the members, this does
not make them so nor change the law regarding agency.
McMahon v. Maccabees, 151 Mo. 542; Andre v. M. W.
A., 102 Mo. App. 377. The local council is agent of the
head council or in this case of the national council.
Jones v. Supreme Lodge, 86 M. E. 193; Benefit Soc.
v. Watson, 84 N. E. 29; Supreme Lodge v. Withers,
177 U. S. 260; Grunvelle v. National Council, 126 Mo.
App. 496.

BROADDUS, P. J.—This suit is to recover on a
benefit certificate issued by the defendant, a fraternal
beneficiary association, doing business in this state.
The defendant, on June 21, 1901, issued to Stella God-

Godwin v. K. L. of S.

win, nee Singleton, its certificate of life insurance, in which it promised to pay to the beneficiary therein named, upon the death of said Stella, the sum of $1000; that afterwards the said Stella and the plaintiff, Earl Godwin, became husband and wife; that afterwards at the request of the said Stella to change the beneficiary named in the certificate, the defendant issued a new certificate wherein plaintiff was named as beneficiary and the original certificate was surrendered. On April 15, 1909, Stella Godwin died. Proper proof of death was made, but defendant refused to pay the amount of the insurance certificate on the ground that the insured had not complied with the rules and regulations of the order in the payment of dues and assessments.

The defense to the action is, that the insured failed to pay her dues and assessments for the month of March, 1909, prior to the 1st day of April, 1909, as required by the laws of the order.

The benefit certificate provides that the contract "is and shall be subject to forfeiture for any of the causes of forfeiture which are now prescribed in the laws of the order, or for any other cause or causes of forfeiture which may be hereafter prescribed by this order by the amendment of said laws." Section 83 of the laws in force requires the beneficiary member of the order to be a member in good standing at the time of his or her death in order to be entitled to participate in the beneficiary fund.

Section 103, idem, provides; that all assessments and dues be paid without notice and paid before the last day of the month. Section 112 provides, that "the certificate of each member, who has not paid his assessments or dues on or before the last day of the month, shall, by the fact of such non-payment, stand suspended without notice, and no act on the part of the council or any officer thereof, or of the national

council, shall be required as essential to such suspension, and all rights under said certificate shall be forfeited, and not restored until duly re-instated by the member complying with the laws of the order, with reference to re-instatement.''

Section 186, idem, provides that no member shall participate in the beneficiary fund, who shall at the time of death be delinquent on account of non-payment of monthly dues. Section 114, idem, provides that a member suspended for non-payment of dues, may, within sixty days, be re-instated by payment of all arrearages; provided, that he be in good health at such time; and ''provided, further, that the receipt and retention of such assessments or dues in case a suspended member is not in good health shall not have the effect of re-instating such member or entitling him or his beneficiaries to any rights under his benefit certificate.''

It is provided in section 169, idem, that a subordinate council of the organization and its officers are made the agents of its members in making application for membership; ''the re-instatement of members; the collection and transmission of all assessments to the national council,'' etc. But it provides, that the national council ''shall not be liable for any negligence in these matters nor be bound by any irregularity, neglect or illegal action by a subordinate council or by any of its officers.''

The defense is further made that the insured was not a proper subject for re-instatement because she was not in good health on or after said first day of April, 1909.

In reply the plaintiff alleges, that if the dues and assessments due on the certificate for the month of March, 1909, were not paid until the first of April, 1909, that said dues and assessments were received by defendant, its officers and agents, with full and complete knowledge of her health and physical condi-

tion on April 1, 1909, and on April 12, 1909, when the delinquent dues and assessments for the month of March were paid to and received by defendant. And it is further set up by way of estoppel, that, while the deceased was a member, defendant at times received from her past dues and assessments without objection, and thereby led her to believe that a strict compliance with the laws of the order in that respect was not required; and that it was a habit of defendant to accept dues and assessments after the time provided for their payment, with full knowledge of the facts. It was shown that on three former occasions the head of the association had received and retained dues and assessments from the member with the knowledge that they had not been paid in time, and without a certificate of her good health.

It was shown that the head of the organization did not receive information that the member was not in good health at the time her past dues and assessments were made, until after her death, and that soon thereafter he tendered these back to plaintiff.

The verdict and judgment were for the plaintiff and defendant appealed. There is practically no dispute as to the controlling facts and the question is one of law. There is no question but what the failure of the member to pay her dues within the time provided in the by-laws of the association *ipso facto* worked a suspension of her membership, unless a wavier was shown.

There was a dispute as to the condition of the member's health on the 1st day of April. The evidence tended to show that up to and including April 1st, she was not seriously sick; that she had what was thought a severe cold, and was able to be up and about in her house. Dr. Gray, the attending physician, testified that he saw the member the latter part of March and treated her for a cold, chills and chilly sensations, fever and coughing, at which time he prescribed for

her; that he did not see her any more for a week; that he got daily reports of her condition, which were favorable; that the next time he saw her was somewhere about the 4th, 5th or 6th of April. She had a violent chill and he decided that she had lobar pneumonia. It was the opinion of doctors that the disease of pneumonia must necessarily have begun at the time of Dr. Gray's first visit to his patient, the latter part of March. It was explained that the pneumonia germ exists in the throats of healthy persons, and that in a person enfeebled by a severe cold these germs are liable to develop and produce pneumonia.

It seems that said section of defendant's by-laws in regard to re-instatement of suspended members was not enacted at the time the certificate was issued, but what was known as section 161 was in force. It reads as follows: "Any beneficiary member suspended by reason of non-payment of an asssessment or assessments may be re-instated upon the following conditions, and none other, viz.: If living, and in good health as when suspended, and if not engaged in any occupation prohibited by the laws of the order, at any time within sixty days from such suspension, by payment to the financial secretary of the council of all arrearages on account of the assessments and dues, including the pending assessments and dues. Upon such payment being made, the financial secretary shall enter the re-instatement of the member upon the books of his office, and report the same to the council at its next meeting."

The certificate provides that the member shall be "entitled to all rights, benefits and privileges of membership therein (of the order) and at her death, she having complied with all of the provisions of the constitution and laws of the order, now in force, or that may be hereafter enacted," etc. It further provides that: "This certificate and contract is and shall be subject to forfeiture for any cause of forfeiture which

is now prescribed in the laws of the order, or for any other cause or causes of forfeiture which may be hereafter prescribed by this order by the amendment of said laws.''

If the question depended alone upon such issue the plaintiff would have no standing. It will be seen that section 114, in force at the time of the suspension, contains no cause of forfeiture other than that provided in section 161, viz.: non-payment of dues and assessments. But there is a material difference in the two sections in other respects. Section 114 provides, that a receipt and retention of unpaid delinquent dues and assessments in case a suspended member is not in good health ''shall not have the effect of re-instating such member or entitling him or his beneficiaries to any right under his certificate,'' whereas, there is no such provision in section 161. But we hold that such a provision in said by-law is invalid. The defendant has no legal right to receipt and retain delinquent dues and assessments until the member dies and then assert that there was no waiver of forfeiture. It amounts to an assertion of the right, that, if the member was sick and recovered, the forfeiture was waived, but, if he died, the forfeiture was not waived. It was shown that from twenty-five to thirty-five per cent of the members were delinquent in the payment of their dues. It is held ''that such a line of conduct on the part of the order and the members, shows that each understands there is a continuous insurance. Otherwise the situation would be that such member would be an insured member at all times, except the time his beneficiary would need it, viz., at his death.'' [Cline v. Woodmen of the World, 111 Mo. App. 601.] Prompt payment of dues and assesments may be waived by a course of dealing with the insured, notwithstanding the policy provides that no waiver of forfeiture shall be valid unless in writing signed by an officer of the association. [Andre v. Modern Woodmen of Amer-

ica, 102 Mo. App. 377; James v. Insurance Co., 148 Mo.
l. c. 10; Cline v. Woodmen of the World, supra.] And
it is there held, in the Andre case, that it would be
doing violence to common knowledge and common
sense alike to suppose that a benefit society, doing
business in every state in the Union, did not know that
a large per cent of its members were not prompt in
the payment of their dues. And it is held, that with
such knowledge, the society waived the delinquencies
and received payments within a reasonable time. That
defendant did know that the local lodge or its
financial agent was receiving the delinquent pay-
ments by its members cannot be questioned, and, not-
withstanding the by-laws of the order nominated the
financier the agent of the members in the receipt of
dues and assessments of delinquent members, he be-
came the agent of defendant by his course of dealing
with the defendant. [McMahon v. Maccabees, 151
Mo. 522; Andre v. Woodmen, supra.] If, however, we
look to the duties which the financier was to perform
in the receipt of delinquent assessments, he was acting
in that capacity as the agent of defendant. It is said:
"A subordinate society and its officers are not made
the agents of the insured by the fact that the by-laws
of the order declare them to be such. The law deter-
mines whose agent one is, from the source of his ap-
pointments and the nature of the duties he is appointed
to perform." [McMahon v. Maccabees, supra.] It
is the contention of defendant that this rule does not
apply to fraternal beneficiary organizations, but we
can see no good reason why it should not apply, and it
was so applied in Andre v. Woodmen, supra, and other
cases.

A careful consideration of the evidence has not
convinced us that the member was sick within the
meaning of the by-laws in question. It is true the cold
the member had up to and including the 1st day of
April afterwards terminated in pneumonia. Healthy

people have colds and they have the germs of pneumonia in their throats, which may or may not finally result in pneumonia. And it was not contemplated by the by-laws that a "bad cold" would be such a sickness as would prevent one of its delinquent members from being a proper subject for re-instatement. Such a contention would be absurd. But, however that may be, it is clear that the act of defendant in receiving and retaining the member's payment, made only one day too late after the appointed time for such payment, and retaining such payment without protest until she died, was a waiver of the cause of forfeiture. The plaintiff was entitled to recover also on the other ground mentioned, that the financier, when he received the delinquent payment and re-instated the member, was acting within the scope of his authority as agent of defendant under the provisions of its by-laws.

And, furthermore, the defendant is estopped from declaring a forfeiture by its manner of its doing business in receiving the delinquent assessments of its members and treating them as re-instated members of its order. Such being our views of the case it is not necessary to notice other assigned errors. The plaintiff was entitled to a judgment on the undisputed facts. Affirmed. All concur.